**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| SAMANTHA LEVEY, individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No.: 1:20-cv-2215 |
| CONCESIONARIA VUELA COMPAÑÍA DE AVIACIÓN, S.A.P.I. DE C.V., and CONTROLADORA VUELA COMPAÑÍA DE AVIACIÓN, S.A.B. DE C.V., foreign corporations d/b/a "VOLARIS," | ) ) ) ) ) ) | JURY TRIAL DEMANDED |
| Defendants. | ) | |

**CLASS ACTION COMPLAINT**

Plaintiff, Samantha Levey ("Levey"), individually and on behalf of all others similarly situated, through her undersigned counsel, alleges for her Class Action Complaint against Defendants, Concesionaria Vuela Compañía de Aviación, S.A.P.I. de C.V. (Volaris Aviation Operating Company), and Controladora Vuela Compañía de Aviación, S.A.B. de C.V. (Volaris Aviation Holding Company), foreign corporations d/b/a Volaris (collectively, "Volaris"), based upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief, including the investigation conducted by her counsel as follows:

**NATURE OF THE ACTION**

1.      This is a class action seeking relief for Plaintiff and others who booked flights on Volaris for travel from the United States to Mexico and whose flights were canceled by Volaris during the COVID-19 (novel coronavirus) pandemic without refunding the amounts these passengers paid for airfare and/or requiring them to pay a penalty to rebook their travel.

2.      As alleged further herein, Volaris canceled many of its flights to Mexico from the United States in the wake of the COVID-19 (Novel Coronavirus) pandemic. Although the United States temporarily closed its border with Mexico due to the pandemic, this restriction did not apply to air travel. When Volaris decided to cancel its flights to Mexico, without notice to its booked passengers, it offered no refunds and continues to deny the refunds to passengers who seek them, despite its contract of carriage and DOT rules requiring refunds and/or required these passenger to pay a penalty to rebook their travel.

3.      Volaris' conduct, described in further detail herein, gives rise Plaintiff's and the class' claims for breach of contract (Count I), unjust enrichment (Count II), unconscionability (Count III) and violation of the Illinois Consumer Fraud and Deceptive Trade Practices Act, 815 ILCS 505/1 *et seq.*, alleged herein.

## JURISDICTION AND VENUE

4.      This Court has original jurisdiction pursuant to 28 U.S.C. § 1332(d)(2), as this is a class action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which members of the class, which number in excess of 100, are citizens of states different from Defendant.

5.      Jurisdiction over Defendant is proper under 735 ILCS 5/2-209(b)(4) (corporation doing business within this State), and Section 2-209(c) (any other basis now or hereafter permitted by the Illinois Constitution and the Constitution of the United States).  735 ILCS 5/2-209(b)(4), and (c).

6.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(1) insofar as this is the judicial district in which Defendant is subject to the Court's personal jurisdiction with respect to this action.

## PARTIES

7.     Plaintiff, Samantha Levey, is a natural person and domiciliary Chicago, Cook County, Illinois.  Plaintiff is a member of the putative class defined herein.

8.     Defendant Concesionaria Vuela Compañía de Aviación, S.A.P.I. de C.V. (Volaris Aviation Operating Company), is a foreign corporation headquartered in Santa Fe, Mexico, that systematically and continuously does business in Illinois and with Illinois residents.

9.     Defendant Controladora Vuela Compañía de Aviación, S.A.B. de C.V. (Volaris Aviation Holding Company), is also a foreign corporation headquartered in Santa Fe, Mexico, that systematically and continuously does business in Illinois and with Illinois residents.

## BACKGROUND

10.     Defendants, collectively referred to by their trade name herein as "Volaris," are an ultra-low-cost air carrier founded in 2005 whose stock is publicly traded on the New York Stock Exchange under the symbol "VLRS." Volaris' international growth strategy is focused on targeting markets in the United States with large Mexican and Mexican-American communities in order to stimulate demand from visiting friends and relative and leisure traffic in those markets. As such, Volaris serves 66 cities throughout Mexico, the United States and Central America and operate up to 394 daily flights to 40 cities in Mexico, including highly demanded destinations such as Cancún, Guadalajara, Mexico City, Monterrey and Tijuana, and 26 cities in the United States and Central America, including: Albuquerque, Charlotte, Chicago, Dallas, Denver, Fresno, Houston, Las Vegas, Los Angeles, Miami, Milwaukee, New York, Oakland, Ontario, Orlando, Phoenix, Portland, Reno, Sacramento, San Antonio, San Jose (California), Seattle, Washington D.C. San Jose (Costa Rica), Guatemala City (Guatemala) and San Salvador (El Salvador).

11. Plaintiff and others like her purchased airfare on Volaris for travel to Mexico during the late winter and early spring when travel from the United States to warm destinations in Mexico is at its peak and fares are most expensive.

12. At all times material hereto, Volaris' terms of carriage for travel originating in the United States provided that, in the event of cancellation, "alternate transportation or compensation will be provided to Passengers in accordance with rules issued by the U.S. Department of Transportation (DOT)." *See* Volaris International Contract of Carriage, https://cms.volaris.com/globalassets/pdfs/eng/contractofcarriageint.pdf (last visited April 8, 2020).

13. On April 3, 2020, the DOT issued an enforcement notice to Volaris and other airlines operating in the United States reiterating the airlines' "longstanding obligation to provide a prompt refund to a ticketed passenger when the carrier cancels the passenger's flight or makes a significant change in the flight schedule and the passenger chooses not to accept the alternative offered by the carrier." *See Enforcement Notice Regarding Refunds by Carriers Given the Unprecedented Impact of the Covid-19 Public Health Emergency on Air Travel*, at 1, https://www.transportation.gov/sites/dot.gov/files/2020-04/Enforcement%20Notice%20Final%20April%203%202020_0.pdf (last visited April 8, 2020).

14. Citing earlier directives, the DOT stated:

> "We reject . . . assertions that carriers are not required to refund a passenger's fare when a flight is cancelled if the carrier can accommodate the passenger with other transportation options after the cancellation. We find it to be manifestly unfair for a carrier to fail to provide the transportation contracted for and then to refuse to provide a refund if the passenger finds the offered rerouting unacceptable (*e.g.*, greatly delayed or otherwise inconvenient) and he or she no longer wishes to travel."

*Id.* n.1 (quoting *Enhancing Airline Passenger Protections*, 76 Fed. Reg. 23110-01, at 23129 (Apr. 25, 2011).

15.     Flight disruptions that are outside a carrier's control, such as the current COVID-19 pandemic do not relieve airlines like Volaris of their obligation to provide refunds to passengers whose flights have been canceled, the DOT said:

> The longstanding obligation of carriers to provide refunds for flights that carriers cancel or significantly delay does not cease when the flight disruptions are outside of the carrier's control (*e.g.*, a result of government restrictions). The focus is not on whether the flight disruptions are within or outside the *carrier's* control, but rather on the fact that the cancellation is through no fault of the *passenger*.

Id. at 1-2 (emphasis added) (footnotes omitted).

16.     Consistent with the above, the DOT further informed airlines like Volaris that an "act of God," such as the current pandemic, does not excuse them from issuing refunds:

> "[A]pplying . . . nonrefundability/penalty provisions in situations in which the change of flight time or travel date has been necessitated by carrier action or 'an act of god' [*sic*], *e.g.*, where the carrier cancels a flight for weather or mechanical reasons . . . is grossly unfair and it violates 49 U.S.C. 41712, as would any contract of carriage or tariff provision mandating such a result . . . ."

*Id.* n.4 (quoting 76 Fed. Reg. at 23129) (citation omitted).

17.     At no time relevant hereto has there been a been on air travel to or from Mexico. Rather, the United States and Mexico entered a joint initiative on March 21, 2020, restricting non-essential ground travel along the U.S.-Mexico land border to prevent the spread of the COVID-19 virus. *See Joint Statement on US-Mexico Joint Initiative to Combat the COVID-19 Pandemic*, https://mx.usembassy.gov/message-for-u-s-citizens-u-s-embassy-mexico-city/ (**"This action does not apply to air travel."**) (emphasis in original) (last visited April 8, 2020).

18.     Notwithstanding the foregoing, Volaris has in recent weeks canceled its flights from the United States to Mexico, without providing refunds to its passengers and/or requiring them to pay a penalty to rebook their travel.

19.     Moreover, Volaris has offered flight credits in lieu of refunds without informing Plaintiff and the Class of their right to a full refund and/or charged them a penalty to rebook their travel.

**FACTS RELATING TO PLAINTIFF**

20.     On or about June 21, 2019, Plaintiff purchased roundtrip airfare from Chicago Midway International Airport (MDW) in Chicago, Illinois, to Bajío International Airport (BJX) in Silao, Guanajuato, Mexico.  The total airfare, including applicable taxes, was $636.57.

21.     Plaintiff's date of departure was March 20, 2020 (Flight 943), and her return date was March 24, 2020 (Flight 942).

22.     On or about March 19, 2020, Volaris canceled the above flights without notice or explanation.

23.     After several unsuccessful attempts to contact Volaris by telephone, email and social media, Volaris finally contacted Plaintiff on or about March 23, 2020. During this telephone call, Volaris refused to provide Plaintiff with a refund of the $636.57 she paid for her flight.

24.     Despite Plaintiff's request of a refund, Volaris offered only to provide a credit toward future travel, in the next 30 days, less applicable change fees. Plaintiff, who could not travel at a later date, rejected Volaris' offer and again demanded a refund, which it refused.

25.     Thereafter, Volaris issued Plaintiff and credit for $404.45 ($232.12 less than the amount she paid) with the condition that she use the credit for another Volaris flight for travel during the period April 6, 2020, and July 5, 2020, or risk losing her total investment.

## CLASS ACTION ALLEGATIONS

26.     This action satisfies the prerequisites for maintenance as a class action provided in

Fed. R. Civ. P. 23(a), as set forth below.

27.     *Class Definition.*   Plaintiff brings this action individually and on behalf of the

following class of similarly situated persons (the "Class"), of which Plaintiff is a member:

> All natural persons domiciled in the United States or its territories
> who purchased airfare on Volaris airlines for travel between March
> 20, 2020, and April 20, 2020 ("Class Period"), whose flights were
> canceled by Volaris and who were not provided a refund of paid fare
> and/or were required to pay a penalty to rebook their travel.

Excluded from the Class is Defendant and any of its respective officers, directors or employees,

the presiding judge, Class counsel and members of their immediate families, and persons or entities

who timely and properly exclude themselves from the Class.

28.     *Illinois Sub-Class*.  In the alternative, Plaintiff brings this action individually and

on behalf of a sub-class of Illinois consumers only who are members of the above-defined class.

29.     *Numerosity.*   The members of the Class are so numerous and geographically

dispersed throughout the United States such that joinder of all members is impracticable.  Plaintiff

believes that there are thousands of persons in the Class.  The exact number and identity of Class

members is unknown to Plaintiff at this time and can only be ascertained from information and

records in the possession, custody or control of Defendant.

30.     *Commonality.*   There are questions of law or fact common to the Class including,

*inter alia*, the following:

a.     whether Volaris' cancellation of the flights of Plaintiff and the Class without

refund constitutes a breach of its contract of carriage;

- 7 -

b.       whether Plaintiff and members of the Class conferred a benefit on Defendant in the form of  airfare paid and whether it would be unjust for Defendant to retain such benefits under the circumstances alleged herein;

c.       whether Volaris' contract of carriage permits cancellation of the flights of Plaintiff and the Class without refund and, if so, whether such terms are unconscionable;

d.       whether Defendant misrepresented and/or omitted material facts regarding its obligation to provide refunds to Plaintiff and the Illinois Subclass when it canceled their flights;

e.       whether Defendant intended that Plaintiff and the Illinois Subclass rely on the foregoing misrepresentations and omissions;

f.       whether Defendant's cancellation of Plaintiff's and the Class' flights was for reasons outside Defendant's control or through no fault of Plaintiff and the Class;

g.       whether the current COVID-19 (novel coronavirus) pandemic is an act of God entitling Plaintiff and the Class to a refund of their airfare and/or penalties paid;

h.       whether Plaintiff and the members of the Class are entitled to their damages, including treble damages, and the appropriate measure thereof; and

i.       whether equitable or injunctive relief is appropriate.

31.    *Typicality.*  The claims of Plaintiff are typical of the claims of the Class alleged herein.  Plaintiff and other members of the Class are all persons who purchased the Hitch and relied on the same, identical false, written statement of affirmative fact.

32.    *Adequacy.*  Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff has retained counsel who are competent and experienced in the prosecution of complex and class action litigation.  The interests of Plaintiff are aligned with, and not antagonistic to, those of the Class.

33.     *Fed. R. Civ. P. 23(b)(2) Requirements.*  The prerequisites to maintaining a class action for injunctive and equitable relief pursuant to Fed. R. Civ. P. 23(b)(2) exist, as Defendant has acted or has refused to act on grounds generally applicable to the Class thereby making appropriate final injunctive and equitable relief with respect to the Class as a whole.

34.     Defendant's actions are generally applicable to the Class as a whole, and Plaintiff seeks, *inter alia*, equitable remedies with respect to the Class as a whole.

35.     Defendant's uniform common course of conduct alleged herein makes declaratory relief with respect to the Class as a whole appropriate.

36.     *Fed. R. Civ. P. 23(b)(3) Requirements.*  This case satisfies the prerequisites of Fed. R. Civ. P. 23(b)(3).  The common questions of law and fact enumerated above predominate over questions affecting only individual members of the Class, and a class action is the superior method for fair and efficient adjudication of the controversy.

37.     The likelihood that individual members of the Class will prosecute separate actions is remote due to the extensive time and considerable expense necessary to conduct such litigation, especially in view of the relatively modest amount of monetary, injunctive and equitable relief at issue for individual Class members.

38.     This action will be prosecuted in a fashion to ensure the Court's able management of this case as a class action on behalf of the Class.

## COUNT I

### (Breach of Contract)

39.     Plaintiff repeats and realleges the allegations of Paragraphs 1 through 38, *supra*, as though fully stated herein.

40.     The airline tickets purchased by Plaintiff and the Class were subject to the terms and conditions of Volaris' contract of carriage, which provided in relevant part that, in the event a flight is cancelled, "alternate transportation or compensation will be provided to Passengers in accordance with rules issued by the U.S. Department of Transportation (DOT)." *See* Volaris International Contract of Carriage, https://cms.volaris.com/globalassets/pdfs/eng/contractofcarriageint.pdf (last visited April 8, 2020).

41.     As set forth in Paragraphs 13 through 16, *supra*, the DOT is adamant that Volaris must refund the airfare and/or penalties paid by Plaintiff and the Class under the circumstances alleged herein; specifically, an action of the carrier or an act of God that results in cancellation.

42.     Notwithstanding the foregoing promises and obligations of Volaris, Plaintiff and the Class have not received their refunds and/or were required to pay penalties despite having performed all of their duties on the contracts of carriage.

43.     As a direct result of the foregoing breach, Plaintiff and the Class have been damaged in an amount to be determined at trial.

**COUNT II**

**(Unjust Enrichment)**

44.     Plaintiff repeats and realleges the allegations of Paragraphs 1 through 38, *supra*, as though fully stated herein. This Count is pled in the alternative to Count I (Breach of Contract), *supra*, pursuant to Fed. R. Civ. P. 8(d)(2).

45.     Plaintiff and the Class conferred a benefit on Volaris in the form of amounts paid to Volaris for their airfare.

46.     Defendant appreciated the benefits of such monies paid by Plaintiff and the Class.

47.     Defendant's acceptance and retention of the aforesaid benefits under the circumstances alleged herein would be inequitable absent the repayment of such amounts to Plaintiff and the Class.

48.     As a result of the foregoing, Plaintiff and the Class have been damaged in an amount to be determined at trial.

## COUNT III

### (Unconscionability)

49.     Plaintiff repeats and realleges the allegations of Paragraphs 1 through 38, *supra*, as though fully stated herein.

50.     Volaris' refusal to provide refunds and/or charging penalties to Plaintiff and the Class is unconscionable because, as alleged herein, the flight cancellations at issue were due to its own actions or acts of God.

51.     Defendant made deceptive and/or misleading representations regarding the fees that would have deceived an objectively reasonable person into believing they were legitimate.

52.     Plaintiff and the members of the Class would not have accepted credits toward future travel in lieu of refunds and/or paid penalties to rebook had they been fully informed regarding the true nature of the fees.

53.     As a result of the foregoing, Plaintiff and the Class have been damaged in an amount to be determined at trial.

## COUNT IV

### (Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 et seq.)

54.     Plaintiff repeats and realleges the allegations of Paragraphs 1 through 38, *supra*, as though fully stated herein.

55.     This Count is brought on behalf of Plaintiff and other members of the Illinois Subclass.

56.     At all times material hereto, there was in full force and effect an act commonly known as the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq.* ("ICFA").

57.     Section 2 of ICFA prohibits "unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation, or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use of employment of any practice described in Section 2 of the 'Uniform Deceptive Trade Practices Act' [815 ILCS 510/2], approved August 5, 1965, in the conduct of any trade or commerce . . . whether any person has in fact been misled, deceived or damaged thereby." 815 ILCS 505/2.

58.     At all times material hereto, there was in full force and effect in this State an act commonly known as the Uniform Deceptive Trade Practices Act ("UDAP"), 815 ILCS 510/2 et seq., incorporated by reference in Section 2 of ICFA, supra.

59.     The aforesaid acts and practices of Defendant constitute unfair or deceptive acts or practices prohibited by Section 2 of ICFA, including but not limited to the use or employment of deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of material fact, with intent that Plaintiff and the Class rely thereon. See 815 ILCS 505/2.

60.     The aforesaid acts and practices of Defendant further fall within the practices prohibited by Section 2 of the Uniform Deceptive Practices Act incorporated by reference in 815 ILCS 505/2, supra.

- 12 -

61. By committing the acts alleged in this Complaint, Defendant misrepresented and/or omitted material facts regarding its obligation to provide refunds to Plaintiff and the Illinois Subclass when it canceled their flights. Defendant made these misrepresentations and/or omissions with the intent that Plaintiff and the Illinois Subclass would rely thereon.

62. As a direct and proximate result of the foregoing, Plaintiff and the Illinois Subclass have sustained economic injury in the amounts they paid for their airfare and/or penalties they have incurred due to Volaris' cancellation of their flights.

63. As a result of the foregoing, Plaintiff and the Class have been damaged in an amount to be determined at trial.

<strong>PRAYER FOR RELIEF</strong>

WHEREFORE, Plaintiff, individually and on behalf of members of the Class, prays for judgment in their favor and against Defendant and for the following relief:

A. Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23, certifying the Class defined herein and designating Plaintiff as representative of the Class and her undersigned counsel as Class counsel;

B. Awarding Plaintiff and the Class their damages and the costs of this action together with reasonable attorneys' fees as determined by the Court;

C. Awarding Plaintiff and the Class all allowable pre- and post-judgment interest on the foregoing awarded damages;

D. Awarding Plaintiff and the Class equitable relief including, *inter alia*, disgorgement of Defendant's ill-gotten gains;

E. Granting appropriate injunctive and declaratory relief; and

F.       Awarding such other and further available relief and any other relief the Court deems just and appropriate.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

Date:  April 8, 2020                 Respectfully submitted,

                                     SAMANTHA LEVEY

                    By:    s/ William M. Sweetnam

                                     William M. Sweetnam
                                     SWEETNAM LLC
                                     53 West Jackson Boulevard, Suite 1440
                                     Chicago, Illinois  60604
                                     (312) 757-1888
                                     wms@sweetnamllc.com

                                     *Attorneys for Plaintiff and the Class*