**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

|  |  |
|---|---|
| SAMANTHA LEVEY, individually and on behalf of all others similarly situated, | |
| Plaintiff, | Case No. 20-cv-2215 |
| v. | Judge John Robert Blakey |
| CONCESIONARIA VUELA COMPAÑÍA DE AVIACIÓN, S.A.P.I. DE C.V., and CONTROLADORA VUELA COMPAÑÍA DE AVIACIÓN, S.A.B. DE C.V., foreign corporations d/b/a/ "VOLARIS," | |
| Defendants. | |

**MEMORANDUM OPINION AND ORDER**

In 2019, Plaintiff Samantha Levey bought an airline ticket from Defendant Concesionaria Vuela Compañía de Aviación, S.A.P.I. de C.V. (Volaris) to travel to Mexico in March 2020. She claims that after the COVID-19 outbreak, Volaris cancelled her ticket and refused to provide a refund. Plaintiff now sues Volaris on behalf of a putative class under state law for breach of contract, unjust enrichment, unconscionability, and violations of the Illinois Consumer Fraud and Deceptive Practices Act (ICFA). Volaris has moved to dismiss the complaint in its entirety. [15]. Plaintiff has moved to appoint interim class counsel. [34]. Finally, non-party Carlos Martinez-Sanchez has moved to intervene for the limited purpose of opposing Plaintiff's motion to appoint interim class counsel. [38]. For the reasons explained below, this Court grants in part and denies in part Volaris' motion [15], denies Plaintiff's motion to

1

appoint [34] without prejudice, and denies Martinez-Sanchez' motion to intervene [38] as moot.

## I.    Background

### A.    The Complaint's Allegations

#### 1.    The Parties

Plaintiff is a Cook County resident.  [1] at ¶ 7.  Volaris operates an ultra-low-cost air carrier.  *Id.* at ¶¶ 8–10.[1]  Volaris serves 66 cities throughout Mexico, the United States, and Central America and operates up to 394 daily flights to 40 cities in Mexico and to 26 cities in the United States and Central America.  *Id.* at ¶ 10.

#### 2.    Plaintiff's Flight

In June 2019, Plaintiff bought roundtrip airfare from Chicago Midway International Airport to Bajio International Airport in Silao, Guanajuato, Mexico; the ticket reflects a March 20, 2020 date of departure and a March 24, 2020 date of return.  *Id.* at ¶¶ 20, 21.  She paid $636.57 for the airfare.  *Id.* at ¶ 20.

But on or about March 19, 2020, after the COVID-19 pandemic hit, Volaris cancelled Plaintiff's flights without notice or explanation.  *Id.* at ¶¶ 2, 22.  After Plaintiff unsuccessfully tried to reach Volaris by phone, email, and social media, Volaris contacted Plaintiff on or about March 23, 2020, by phone.  *Id.* at ¶ 23.  On the call, Volaris refused to provide Plaintiff with a refund of the $636.57 she paid for the flight, offering instead to provide a credit toward future travel in the next thirty days, less applicable change fees.  *Id.* at ¶¶ 23–24.

---

[1] Plaintiff also sued Controladora Vuela Compañía de Aviación, S.A.B. de C.V. (Volaris Aviation Holding Company) but has agreed to "discontinue" the case against this entity.  [15] at 3 n.2.

Plaintiff could not travel at a later date and therefore rejected Volaris' offer, again demanding a refund, which Volaris refused. *Id.* at ¶ 24. Thereafter, Volaris issued Plaintiff a credit for $404.15 ($232.12 less than she originally paid) to use on another Volaris flight between April 6 and July 5, 2020. *Id.* at ¶ 25.

The relevant contract of carriage (COC) effective at the time Plaintiff purchased her ticket provided that, in the event of a flight cancellation, "alternate transportation or compensation will be provided to Passengers in accordance with rules issued by the U.S. Department of Transportation (DOT)." *Id.* at ¶ 8.

### B.     Procedural History

Plaintiff filed her class action complaint in April 2020, invoking this Court's original jurisdiction under 28 U.S.C. § 1332(d)(2). [1] at ¶ 4. The complaint asserts state-law claims for breach of contract (Count I); unjust enrichment (Count II); unconscionability (Count III); and violations of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. Ann. 505/1–12 (West 2020) (Count IV). *Id.* at ¶¶ 39–63. Volaris has moved to dismiss the complaint in its entirety. [15].

### II.     Legal Standard

Volaris moves to dismiss for lack of standing and for failure to state a claim. Rule 12(b)(1) permits dismissal for lack of standing. *Taylor v. McCament*, 875 F.3d 849, 853 (7th Cir. 2017). Analyzing a motion to dismiss under Rule 12(b)(1) requires this Court to construe Plaintiff's complaint in the light most favorable to Plaintiff, accept as true all well-pleaded facts, and draw reasonable inferences in her

favor. *Silha v. ACT, Inc.*, 807 F.3d 169, 173 (7th Cir. 2015); *Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 554 (7th Cir. 1999).

Similarly, a motion to dismiss under Rule 12(b)(6) requires the court to construe the facts and draw inferences in the plaintiff's favor. *Yeftich v. Navistar, Inc.*, 722 F.3d 911, 915 (7th Cir. 2013). To survive, the complaint must "state a claim to relief that is plausible on its face." *Yeftich*, 722 F.3d at 915. For a claim to have facial plausibility, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While the sufficiency of the factual allegations depends upon the complexity of the case, threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, will not suffice. *Limestone Dev. Corp. v. Village of Lemont*, 520 F.3d 797, 803–04 (7th Cir. 2008).

## III. Volaris' Motion to Dismiss

In moving to dismiss, Volaris argues that Plaintiff lacks standing to pursue her breach of contract claim; that the Airline Deregulation Act of 1978 (ADA) expressly preempts Plaintiff's state-law claims; that Plaintiff otherwise fails to state plausible state-law claims; and that the putative class members' claims are moot. [15]. As a jurisdictional question, the issue of standing comes first in this Court's analysis. *Gadelhak v. AT&T Servs., Inc.*, 950 F.3d 458, 461 (7th Cir. 2020).

### A. Standing

Article III of the Constitution limits "federal judicial power to certain 'cases' and 'controversies.'" *Silha*, 807 F.3d at 172–73 (quoting *Lujan v. Defs. of Wildlife*,

504 U.S. 555, 559−60 (1992)). To establish Article III standing, "a plaintiff must show that: (1) [he] has suffered an injury in fact that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Silha*, 807 F.3d at 173 (internal quotation omitted) (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180−81 (2000)). The party invoking federal jurisdiction bears the burden of establishing the elements of Article III standing. *Bryant v. Compass Grp. USA, Inc.*, 958 F.3d 617, 620 (7th Cir. 2020).

Volaris argues that Plaintiff fails to establish both an injury-in-fact and an injury traceable to Volaris on her breach of contract claim because nothing in the COC requires Volaris to provide Plaintiff a refund. [15] at 15; [32] at 10. But this argument conflates Article III standing with the merits of Plaintiff's breach of contract claim. *See Bond v. United States*, 564 U.S. 211, 219 (2011) (noting that "the question whether a plaintiff states a claim for relief 'goes to the merits' in the typical case, not the justiciability of a dispute"); *Arreola v. Godinez*, 546 F.3d 788, 794–95 (7th Cir. 2008) ("Although the two concepts unfortunately are blurred at times, standing and entitlement to relief are not the same thing."); *see also, e.g.*, *Tri-State Disposal, Inc. v. Village of Riverdale*, 369 F. Supp. 3d 866, 874 (N.D. Ill. 2019) (finding that plaintiff's allegation of economic harm sufficiently established injury in fact for breach of contract claim, and noting that courts do not "consider the merits" of the claim in assessing standing).

5

Indeed, for standing purposes, Plaintiff need not definitively establish a contractual entitlement to a refund, but a cognizable injury-in-fact traceable to Volaris' conduct. *Silha*, 807 F.3d at 172–73. Plaintiff does so: she claims to have suffered an economic injury caused by Volaris' refusal to refund her. [1] at ¶¶ 42, 43. This suffices to allege a concrete and particularized economic injury for the purposes of Article III standing, *see Milwaukee Police Ass'n v. Flynn*, 863 F.3d 636, 639 (7th Cir. 2017) (noting that "financial injuries are prototypical of injuries for the purposes of Article III standing"), as well as an injury suffered as a consequence of Volaris' conduct, *Johnson v. U.S. Office of Pers. Mgmt.*, 783 F.3d 655, 660 (7th Cir. 2015) (holding that an injury is "fairly traceable" if it results from the defendant's alleged conduct). As Plaintiff sufficiently demonstrates she possesses standing to pursue her breach of contract claim, this Court now turns to the merits of the case.

### B.     Preemption

Volaris next argues that the ADA expressly preempts all of Plaintiff's state-law claims. [15] at 8–13.

### 1.     The ADA

In 1978, Congress enacted the ADA, which "largely deregulated domestic air transport." *Am. Airlines, Inc. v. Wolens*, 513 U.S. 219, 222 (1995). To ensure that States would not undo federal deregulation with their own regulations, Congress included an express preemption clause in the ADA. *Nw., Inc. v. Ginsberg*, 572 U.S. 273, 280 (2014).

That preemption clause states, in relevant part:

> Except as provided in this subsection, a State, political subdivision of a State, or political authority of at least 2 States may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier that may provide air transportation under this subpart.

49 U.S.C. § 41713(b)(1).

This preemption provision is one of "unusual breadth," *Altria Grp., Inc. v. Good*, 555 U.S. 70, 85 (2008), and applies to any state-law claim "having a connection with or reference to airline 'rates, routes, or services,'" *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 384 (1992); *see also S.C. Johnson & Son, Inc. v. Transp. Corp. of Am.*, 697 F.3d 544, 553 (7th Cir. 2012) (ADA preemption applies where: (1) a State enacts or enforces a law that (2) "relates to" airline rates, routes, or services, either by expressly referencing them or by having a significant economic effect upon them).

Notwithstanding this general rule regarding ADA preemption, the Supreme Court has articulated a narrow exception—known as the *Wolens* exception—in the context of breach of contract claims, recognizing that the ADA does not "shelter airlines from suits . . . seeking recovery solely for the airline's alleged breach of its own, self-imposed undertakings." *Wolens*, 513 U.S. at 229. A breach of contract claim can thus survive ADA preemption under the *Wolens* exception so long as it does not require "enlargement or enhancement" of the contract "based on state laws or policies external to the agreement." *Id.* at 233; *see also Costello v. BeavEx, Inc.*, 810 F.3d 1045, 1052 (7th Cir. 2016).

In short, to avoid preemption under the ADA, Plaintiff must allege state-law claims that do not constitute state enforcement related to airline rates, routes, or

services, or alternatively, breach of contract claims that fall under the *Wolens* excep-

tion. *Costello*, 810 F.3d at 1051–52; *Hughes v. Sw. Airlines Co.*, No. 18 C 5315, 2019

WL 1375927, at *3 (N.D. Ill. Mar. 26, 2019). With these standards in mind, this Court

turns now to the merits of Volaris' preemption arguments.

### 2. Preemption of Plaintiff's Claims

The crux of each of Plaintiff's claims is identical: Plaintiff complains about

Volaris' alleged refusal to refund Plaintiff's airfare after cancelling her flights. [1] at

¶¶ 22, 41, 45, 52, 61.

As Volaris points out, the Seventh Circuit has ruled "it obvious that canceled

ticket refunds relate to rates," and thus, that the ADA preempts state-law claims

challenging an airline's ticket refund practices. *Statland v. Am. Airlines, Inc.*, 998

F.2d 539, 542 (7th Cir. 1993); *see also Ginsberg*, 572 U.S. at 284 (describing "rate" as

referring to the "price of a particular ticket"). Because Plaintiff's claims challenge

Volaris' ticket refund practices, the ADA presumptively preempts Plaintiff's claims

under *Statland*. Plaintiff does not even acknowledge or attempt to distinguish *Stat-

land*, and thus has conceded this point. *Ennin v. CNH Indus. Am., LLC*, 878 F.3d

590, 595 (7th Cir. 2017); *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010).

Plaintiff's claims therefore only survive preemption if they fall within the nar-

row contours of the *Wolens* exception. Plaintiff insists they do, [26] at 7–10, but the

*Wolens* exception only applies to breach of contract claims, *Wolens*, 513 U.S. at 232–

33; *Polinovsky v. British Airways, PLC*, No. 11 C 779, 2012 WL 1506052, at *2 (N.D.

Ill. Mar. 30, 2012); *Giannopoulos v. Iberia Lineas Aereas de Espana, S.A.*, No. 11 C

775, 2011 WL 3166159, at *2 (N.D. Ill. July 27, 2011). Accordingly, the *Wolens* exception does not save Plaintiff's claims in Counts II (unjust enrichment), III (unconscionability), and IV (violations of the ICFA) from preemption under the ADA. This Court dismisses those counts.

That leaves Plaintiff with her breach of contract claim. As explained above, to avail herself of the *Wolens* exception on this claim, Plaintiff must assert that Volaris breached the terms confined in the relevant contract, with "no enlargement or enhancement based on state laws or policies external to the agreement." *Wolens*, 513 U.S. at 233. Plaintiff posits that Volaris violated a DOT rule by refusing to refund her when it cancelled her flight in the midst of the pandemic, therein breaching the COC, which provides that in the event of a flight cancellation, "alternate transportation or compensation will be provided to Passengers in accordance with rules issued by the U.S. Department of Transportation (DOT)." [1] at ¶ 12.

In support of her argument, Plaintiff cites to an Enforcement Notice that DOT promulgated on April 3, 2020, which states in relevant part: "Carriers have a longstanding obligation to provide a prompt refund to a ticketed passenger when the carrier cancels the passenger's flight or makes a significant change in the flight schedule and the passenger chooses not to accept the alternative offered by the carrier." U.S. Dep't of Trans., *Enforcement Notice Regarding Refunds by Carriers Given the Unprecedented Impact of the COVID-19 Public Health Emergency on Air Travel*, (April 3, 2020), https://www.transportation.gov/sites/dot.gov/files/2020-04/Enforcement%20Notice%20Final%20April%203%202020_0.pdf. This Enforcement Notice,

9

Plaintiff argues, constitutes a DOT "rule" that Volaris violated, therein breaching the terms of the COC by failing to provide Plaintiff a refund in accordance with that "rule." [26] at 7–10.

Volaris counters that Plaintiff misplaces reliance upon the Enforcement Notice, which it attempts to characterize as a mere "guidance document that does not create a binding requirement on the airline." [15] at 14. While that may be true, the COC does not state that Volaris must abide only by DOT's "formal" or "binding" "rules." [1] at ¶ 12. Rather, Volaris agreed to follow *any* "rules issued by the U.S. Department of Transportation (DOT)." *Id.* The plain language of the COC thus does not require the narrow interpretation Volaris now urges.

Further, although the COC does not define the term "rule," DOT's own website makes reference to three types of "rules" DOT promulgates: (1) legislative rules, which legally bind "the agency the public, and the courts"; (2) non-legislative rules, "*often referred to as 'guidance'*"; and (3) interpretive rules. U.S. Dep't of Transp., *Rulemaking Process* (last updated July 22, 2020), https://www.transportation.gov/regulations/rulemaking-process#whatisrule (emphasis added). This description lends support to Plaintiff's theory that the Enforcement Notice, which Volaris characterizes as a guidance, qualifies as a "rule" within the meaning of the COC. Accordingly, because Plaintiff has stated a facially plausible claim that Volaris breached its own "self-imposed undertakings" by failing to follow a DOT rule, her breach of contract claim survives ADA preemption. *Wolens*, 513 U.S. at 229.

### C.     Merits of Plaintiff's Breach of Contract Claim

In the alternative to preemption, Volaris also argues that Plaintiff's breach of contract claim fails on the merits.  [15] at 11–13.  A breach of contract claim under Illinois requires that Plaintiff plead the following four elements: (1) the existence of a valid and enforceable contract, (2) her substantial performance under the contract, (3) Volaris' breach of that contract, and (4) damages resulting from the alleged breach of contract.  *Swyear v. Fare Foods Corp.*, 911 F.3d 874, 886 (7th Cir. 2018).

Volaris argues that Plaintiff has failed to plead the third element—breach— for two reasons.  First, similar to its preemption argument, Volaris contends that Plaintiff has not identified a DOT "rule" that it violated in breach of the COC.  [15] at 14.  But, as explained above, Plaintiff has plausibly alleged that the Enforcement Notice constitutes a cognizable DOT "rule" requiring Volaris to issue prompt refunds upon cancellation or significant change to a flight if the passenger refuses an alternative offer.  Plaintiff has further pled that Volaris also failed to offer her a prompt refund, thus contravening the plain terms of the COC.

Volaris also contends that, based upon its investigation of Plaintiff's claim, it did not in fact breach the COC because it did not cancel her flight, but rather changed the originating airport of her flight from Midway to O'Hare.  *Id.*  According to Volaris, the changed flight operated the same date as originally intended, it informed Plaintiff via email of this change, and Plaintiff failed to show up for the flight.  *Id.*  In advancing this argument, however, Volaris relies entirely upon evidence outside the pleadings, including an affidavit from Susana de la Torre Abardía, its legal manager for

fleet and regulatory matters. *Id.*; [32] at 7–8. This Court cannot consider such material without converting the motion to a motion for summary judgment—something neither party has asked this Court to do. *See* Fed. R. Civ. P. 12(d).

Regardless, such evidence—even if properly considered on a Rule 12(b)(6) motion—would not necessarily doom Plaintiff's claim. The Enforcement Notice requires that carriers provide a "prompt refund" if a carrier cancels or significantly changes a flight and the "*passenger chooses not to accept the alternative offered.*" It remains plausible that Plaintiff's failure to show up for the changed flight resulted from her choice to not accept that alternative, thus entitling her to a prompt refund. For these reasons, and because whether Volaris ultimately breached the COC will involve fact-intensive inquiries, this Court finds dismissal of the breach of contract claim inappropriate at this juncture.

### D.    Class Claims

Finally, Volaris contends that the putative class members' claim must be dismissed because it "has reached out to passengers" whose flights it cancelled and "offered the option of a refund." [32] at 6–7. Thus, according to Volaris, no putative class members exist based upon Plaintiff's class definition, which states:

> All natural persons domiciled in the United States or its territories who purchased airfare on Volaris airlines for travel between March 20, 2020, and April 20, 2020 ("Class Period"), whose flights were canceled by Volaris and who were not provided a refund of paid fare and/or were required to pay a penalty to rebook their travel.

*Id.*; [1] at ¶ 27.[2]  While Volaris might ultimately prevail on the merits of this argument, this Court finds it premature at this stage.  As it did in arguing for dismissal of Plaintiff's breach of contract claim, Volaris submits extrinsic evidence to bolster its assertion that no class members exist.  *See* [32] at 6–7.  But Plaintiff has yet had the opportunity to test this argument, which is more appropriately brought at the class certification stage.  *See, e.g.*, *Buonomo v. Optimum Outcomes, Inc.*, 301 F.R.D. 292, 295 (N.D. Ill. 2014) (noting that if a "dispute concerning class certification is factual in nature" and requires discovery to determine whether a class could be certified, courts should deny motions to strike allegations as premature) (internal quotation omitted).  Thus, for now, this Court declines Volaris' motion to dismiss the class claims.

## IV.    Plaintiff's Motion to Appoint Interim Counsel

This Court next considers Volaris' motion to appoint interim counsel under Federal Rule of Civil Procedure 23(g).  [34].  Under Rule 23(g)(3), this Court "may designate interim counsel to act on behalf of a putative class before determining whether to certify the action as a class action."  Interim class counsel might be appropriate where "overlapping, duplicative, or competing class suits are pending before a court, so that appointment of interim counsel is necessary to protect the interests of class members."  *Moehrl v. Nat'l Ass'n of Realtors*, No. 19-CV-01610, 2020 WL

---

[2] Volaris, in contrast, represents that it did not reach out to Plaintiff because (1) she is represented by counsel; and (2) Plaintiff's flight actually operated (because Volaris operated a flight from O'Hare to Bajio International Airport on the same date).  [32] at 7.

5260511, at *1 (N.D. Ill. May 30, 2020) (quoting *Bartling v. Apple Inc.*, No. 5:18-CV-00147-EJD, 2018 WL 4804735, at *1 (N.D. Cal. Apr. 27, 2018)).

Plaintiff requests that this Court appoint her counsel, Keith J. Keogh and William M. Sweetnam of Keogh Law, Ltd. (Keogh), as interim counsel. [34] at 1. She alludes to a separate class action complaint—filed by a different firm on behalf of Carlos Martinez-Sanchez, a different named plaintiff—against Volaris brought originally in the U.S. District Court for the Southern District of New York. *Id.* at 1–2; *see also* [34-1] at 2–13. By consent of the parties, the New York district court has since transferred Martinez-Sanchez' case to this district, where it is currently pending before Judge Tharp. *Martinez-Sanchez v. Concesionaria Vuela Compania De Aviacion S.A.P.I. De C.V.*, No. 21 CV 183 (N.D. Ill. Jan. 11, 2021).

Plaintiff argues that appointing interim counsel is necessary to reach a global settlement as to the universe of potential class members encompassed by both lawsuits. [34] at 1–2. Volaris counters that Plaintiff's request is premature. [37] at 1. This Court agrees with Volaris. Typically, courts find interim counsel necessary only "where a large number of putative class actions have been consolidated or otherwise *are pending in a single court.*" *Donaldson v. Pharmacia Pension Plan*, No. CIV. 06-3-GPM, 2006 WL 1308582, at *1 (S.D. Ill. May 10, 2006) (emphasis added); *see also Moehrl v. Nat'l Ass'n of Realtors*, No. 19-CV-01610, 2020 WL 5260511, at *1 (N.D. Ill. May 30, 2020) ("Instances in which interim class counsel is appointed are those in which overlapping, duplicative, or competing class suits are pending before a court,

14

so that appointment of interim counsel is necessary to protect the interests of class members." (internal quotation omitted)).

While, to be sure, Defendant has moved to consolidate the *Martinez-Sanchez* case with this one and to reassign that case to this Court, [43], this Court has just ruled on that motion today. Thus, because only one case is pending before this Court (pending action of this Court's Executive Committee), Plaintiff's request to appoint interim counsel in this case remains premature, and this Court denies that motion [34] without prejudice.

Finally, Carlos Martinez-Sanchez has moved to intervene in this case for the limited purpose of filing an opposition brief to Plaintiff's motion to appoint Keogh as interim class counsel. [38]. Because this Court does not need to consider, and indeed did not consider, Martinez-Sanchez' objection to Plaintiff's motion, this Court denies his motion [38] as moot.

V.      **Conclusion**

For the reasons explained above, this Court grants in part and denies in part Volaris' motion to dismiss [15]. Counts II through IV of Plaintiff's complaint [1] are dismissed, while Plaintiff's breach of contract claim in Count I and her class allegations stand. In addition, this Court denies without prejudice Plaintiff's motion to appoint interim class counsel [34], and denies as moot Carlos Martinez-Sanchez' motion to intervene [38].

Dated: March 29, 2021

Entered:

John Robert Blakey
United States District Judge